# In the United States Court of Federal Claims

No. 98-312C
(Filed July 14, 2014)
NOT FOR PUBLICATION

```
* * * * * * * * * * * * * * * * *
                                *
                                *
STANLEY K. MANN,                *
                                *
                Plaintiff,      *
                                *
        v.                      *
                                *
THE UNITED STATES,              *
                                *
                Defendant.      *
                                *
* * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

The matter before the Court is the application of plaintiff Stanley K. Mann for an award of attorney's fees and costs brought under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The Court had previously determined that plaintiff was entitled to $869,501.52 in damages for the government's breach of his geothermal lease. *See Mann v. United States*, 86 Fed. Cl. 649 (2009) (*Mann IV*). Mister Mann has applied for a total of $373,999.14 in attorney's fees and costs, broken down as follows: $262,449.17 in attorney's fees; $90,817.65 in fees and expenses incurred directly by him or by his attorneys (part of which was also included in plaintiff's Bill of Costs as the subject of a claim for allowable costs made to the Clerk of the Court pursuant to Rule 54(d) of the Rules of the United States Court of Federal Claims ("RCFC")); and $20,732.32 in attorney's fees and expenses for the EAJA phase of this case. Pl.'s Mot. for Attorney's Fees and Expenses ¶ 4 ("Pl.'s Mot."); Pl.'s Reply Mem. in Supp. of Pl.'s Mot. at 19–20 & n.14 ("Pl.'s Reply"). For the reasons below, the Court concludes that Mr. Mann is entitled to $368,759.44, which represents the full amount of requested attorney's fees and costs, reduced only by those costs already awarded or disallowed by the Clerk of the Court.

# I. BACKGROUND

This case concerns a geothermal lease originally issued by the Bureau of Land Management ("BLM") to Southland Royalty Company in 1981 for the purpose of developing and utilizing geothermal resources on land administered by the Secretary of the Interior. *See Mann IV*, 86 Fed. Cl. at 651. Southland Royalty Company immediately assigned the lease to Chaffee Geothermal, Ltd. ("Chaffee"), which drilled three production wells on the leased land in 1981 and 1982. *Id.* Although Chaffee found several production zones of hot water, Chaffee's investors ceased providing funding for the company and Chaffee's employees were laid off in February 1983. *Id.* at 652. The lease was ultimately reassigned to Mr. Mann, former chief executive officer of Chaffee and then-president of Crowne Geothermal, Ltd. ("Crowne"). *Id.* In 1986, the BLM approved the lease reassignment to Mr. Mann in his individual capacity, after which time Mr. Mann became the sole lessee of the property and paid all expenses related to developing geothermal resources on the land. *See Mann v. United States*, 68 Fed. Cl. 666, 668 (2005) (*Mann III*).

Mister Mann corresponded with the BLM and the Minerals Management Service ("MMS") throughout the course of the lease using a Malibu, California address --- his address of record with the agency. *Mann v. United States*, 334 F.3d 1048, 1052 (Fed. Cir. 2005) (*Mann II*). In 1993, the BLM issued a "Lease Determination" to inform Mr. Mann that his lease would expire thirty days after receipt of the decision unless he was able to demonstrate his "diligent efforts" to utilize the geothermal resources on the leased land. *Id.* at 1049–50. However, the BLM sent a copy of the Lease Determination to Mr. Mann at a Costa Mesa, California address for Crowne --- it had obtained this address from an unsigned, courtesy copy of correspondence between Mr. Mann and his lease bond insurance company that Mr. Mann had forwarded to the BLM. *Mann III*, 68 Fed. Cl. at 668. The Lease Determination was returned to the BLM as "unclaimed," and thereafter the BLM made no additional attempts to contact Mr. Mann regarding the termination of his lease. *See Mann II*, 334 F.3d at 1050. Mister Mann did not learn of the Lease Determination until more than eighteen months later during a visit to the BLM, where he was finally informed that his lease had terminated sixty days from the date the mailed Lease Determination was returned to the BLM. *Id.*

Mister Mann unsuccessfully appealed the BLM's termination decision before the Interior Board of Land Appeals ("IBLA"). *Mann IV*, 86 Fed. Cl. at 652. He subsequently sought district court review of the IBLA's determination under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, but voluntarily dismissed that action in order to pursue his claims in this court. *See id.* His original complaint included a claim for breach of contract as well as two Fifth Amendment claims --- one for the taking of private property without the payment of just compensation and

one for the deprivation of property without due process of law.  *Id.*[1]  The court granted the government's motion to dismiss the due process claim for lack of subject matter jurisdiction, granted the government's motion for summary judgment on the breach of contract claim, and denied Mr. Mann's cross motion for judgment as to liability.  *See Mann v. United States*, 53 Fed. Cl. 562 (2002) (*Mann I*).  The Federal Circuit reversed the decision regarding the breach of contract claim, finding that the government breached the terms of the lease agreement with Mr. Mann by sending the Lease Determination to the wrong address and thus failing to provide him the requisite notice prior to termination.  *See Mann II*, 334 F.3d at 1052.  Having ruled on liability, the Federal Circuit remanded the case to this court where it was re-assigned to the undersigned for a determination on damages.  The government moved for partial summary judgment, arguing that Mr. Mann was not entitled to recovery based on either the theory of lost profits or restitution.  *See Mann III*, 68 Fed. Cl. at 666.  That motion was denied.  After a three-day trial on damages in Las Cruces, New Mexico and extensive post-trial briefs filed by both parties, judgment was entered in Mr. Mann's favor in the amount of $869,501.52.  *See Mann IV*, 86 Fed. Cl. at 667–68.  Mister Mann now seeks an award of attorney's fees and expenses pursuant to the EAJA.

## II.  DISCUSSION

### A.  Legal Standard

Recognizing the "economic deterrent" created by the mounting costs of litigation and the vast disparity in resources between the government and individuals (including certain organizations), Congress enacted the EAJA "to eliminate legal expenses as a barrier to challenges of unreasonable government action."  *Cmty. Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1145 (Fed. Cir. 1993) (quoting *Ellis v. United States*, 711 F.2d 1571, 1576 (Fed. Cir. 1983)); *see* H.R. Rep. No. 96-1418, at 5–6 (1980).  The EAJA gives this Court authority to "award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A) (2012).  The statute makes clear that "fees and other expenses" include "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees."  *Id.* § 2412(d)(2)(A).  The amount of "reasonable attorney fees" is calculated based upon "prevailing market rates," but is capped at $125 per hour unless the court determines that a cost of living adjustment is appropriate.  *Id.*

---

[1]  Plaintiff dropped the takings claim prior to oral argument.  *See Mann v. United States*, 53 Fed. Cl. 562, 563 n.1 (2002) (*Mann I*).

A "prevailing party" is eligible for attorney's fees "incurred by that party in any civil action . . . brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A). The EAJA defines "party" as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." *Id.* § 2412(d)(2)(B). A party is considered to be prevailing "if he succeeded 'on any significant issue which achieves some of the benefits sought by the suit.'" *Loomis v. United States*, 74 Fed. Cl. 350, 353 (2006) (quoting *Owen v. United States*, 861 F.2d 1273, 1274 (Fed. Cir. 1988)).

The EAJA requires, within thirty days of final judgment, the party seeking a fee award to "submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). The EAJA requires the party seeking the fee award to allege in its fee application that the position of the United States was not substantially justified. *Id.* The government, however, bears the burden of demonstrating that its position was substantially justified. *See, e.g.*, *Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 697 (2010); *see also White v. Nicholson*, 412 F.3d 1314, 1315 (Fed. Cir. 2005). Indeed, the statute "imposes no burden on the fee applicant." *Scarborough v. Principi*, 541 U.S. 401, 414 (2004).

The government's position as contemplated by the EAJA includes both "the position taken by the United States in the civil action [and] the action or failure to act by the agency upon which the civil action is based[.]" 28 U.S.C. § 2412(d)(2)(D); *see also, e.g.*, *Comm'r v. Jean*, 496 U.S. 154, 158 (1990) (stating that "position of the United States" means "both the agency's prelitigation conduct and the Department of Justice's subsequent litigation positions"); *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995) (same); *Filtration Dev. Co., L.L.C. v. United States*, 63 Fed. Cl. 612, 619 (2005) (same). Indeed, the Federal Circuit has underscored that "[i]n the context of EAJA claims, . . . the 'position of the United States' . . . refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.'" *Blakely v. United States*, 593 F.3d 1337, 1341 (Fed. Cir. 2010) (quoting *Doty*, 71 F.3d at 386). "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B).

The Supreme Court has explained that a position is "substantially justified" if it is "justified in substance or in the main --- that is, justified to a degree that could satisfy a reasonable person. That is no different from the reasonable basis both in law and fact formulation . . . ." *Pierce v. Underwood*, 487 U.S. 552, 565–66 (1988); *see also KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593, 598 (1997). Importantly, though, "a position can be justified even though it is not correct,

- 4 -

and . . . it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct . . . ." *Pierce*, 487 U.S. at 566 n.2.  The government's position cannot be substantially justified when it violates established agency precedent or contradicts unambiguous regulations.  *See Geo-Seis Helicopters, Inc. v. United States*, 79 Fed. Cl. 74, 78 (2007) ("The government's position will not be found to be reasonable or substantially justified when explicit, unambiguous regulations directly contradict that position."); *Hillensbeck v. United States*, 74 Fed. Cl. 477, 481 (2006) ("For purposes of an award under the EAJA, '[t]here is no justification for the [G]overnment's position when clear, unambiguous regulations directly contradict that position.'" (quoting *Filtration Dev. Co.*, 63 Fed. Cl. at 621)).

In determining whether the government's position was substantially justified, the court should "treat[] the case as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 162; *Filtration Dev. Co.*, 63 Fed. Cl. at 619.  As such, the court's finding as to "substantial justification" is a single determination that considers the conduct of both the relevant agency prior to litigation and the government during litigation.  *Id.*  Success or failure in a prior tribunal is not necessarily indicative of whether a position was substantially justified.  *See Pierce*, 487 U.S. at 569 ("Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified.  Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."); *Cmty. Heating*, 2 F.3d at 1145–46 ("[T]he position of the government is not shown to be substantially justified merely because the government prevailed before a lower tribunal.").  Rather, the focus "is whether the 'government's overall position' is substantially justified, 'examin[ing] not only the government's success or failure, but also the reasonableness of its position in defending against the suit." *Precision Pine & Timber, Inc. v. United States*, 83 Fed. Cl. 544, 551 (2008) (quoting *CEMS, Inc. v. United States*, 65 Fed. Cl. 473, 479 (2005)).

## B.  Eligibility for Award

Plaintiff contends that he is entitled to an EAJA award because he is the "prevailing party," there are no "special circumstances" as contemplated by the EAJA, and neither the government's position during the course of the litigation nor the BLM's underlying conduct giving rise to the litigation were substantially justified.  Mem. in Supp. of Pl.'s Mot. for Att'ys Fees & Expenses Under the Equal Access to Justice Act at 5 ("Pl.'s Mem.").  The government does not dispute Mr. Mann's timely filing of his fee application or his status as the prevailing party, nor does it contend that there are any special circumstances in this case that would preclude an award of attorney's fees and costs pursuant to the EAJA.  Rather, the government maintains that its position was substantially justified and thus that Mr. Mann is not entitled to a fee award.  *See* Def.'s Opp'n to Pl.'s Application for the Award of Fees & Other Expenses at 2–5 ("Def.'s Mem.").  The Court finds that the

government has failed to meet its burden of demonstrating that the position of the United States was "substantially justified" within the meaning of the EAJA.

The EAJA requires the party petitioning for costs and fees to allege that the position of the government was not substantially justified.  28 U.S.C. § 2412(a)(1)(B); *see Scarborough*, 541 U.S. at 414.  According to plaintiff, the government's position at the agency level was not substantially justified because the BLM failed to follow binding precedent and its own regulations when it mailed the Lease Determination to the wrong address and failed to subsequently ensure that Mr. Mann received the notification.  Pl.'s Mem. at 11–12.  Further, plaintiff contends that the government's litigation positions were not substantially justified because they lacked evidentiary support or were rejected at some stage of the litigation --- either in this court or at the Federal Circuit.  *Id.* at 13–19.  Plaintiff has thus satisfied the pleading threshold, and the burden is on the government to demonstrate its position was substantially justified.

While the government certainly contests plaintiff's characterization of its conduct at the administrative level, it does not offer satisfactory evidence to meet its burden of demonstrating that its conduct was substantially justified.  Indeed, the government does not substantively address plaintiff's charge that the agency failed to follow binding precedent when it mailed the Lease Determination to Mr. Mann's Costa Mesa, California address instead of the Malibu, California address that it had on file.  Rather, the government argues that its position "as a whole" was substantially justified.  Specifically, the government argues that because neither this Court nor the Federal Circuit reached the merits of the BLM's termination decision, there is an insufficient record on which to evaluate the BLM's decision to terminate plaintiff's lease, Def.'s Mem. at 3–4, and that in any event the BLM was substantially justified in sending the lease termination notification to the Costa Mesa, California address as evidenced by this Court's ruling to that effect in *Mann I. Id.* at 2–3.[2]  Moreover, the government relies on the fact that plaintiff did not prevail on every issue at trial and a favorable ruling in this court in support of the "reasonableness" of its litigation positions.  *Id.* at 5–6.

Examining the government's position as a whole, the Court is not persuaded that the government's agency position or litigation positions were substantially justified.  As to the agency position, the BLM was not substantially justified in sending the Lease Determination to the wrong address and failing to correct the mistake when the Lease Determination was returned as "unclaimed."  First, it is well-established that prior favorable rulings are not dispositive in determining

---

[2]  The argument concerning the termination decision is misguided.  Based on the trial record, the Court specifically found that "Mr. Mann did make diligent efforts to utilize these resources through the date of the breach and could have established this to BLM's satisfaction."  *Mann IV*, 86 Fed. Cl. at 664.

substantial justification. *See Pierce*, 487 U.S. at 569; *Cmty. Heating*, 2 F.3d at 1145–46. Here, although the trial court originally found that it was reasonable for the BLM to mail the Lease Determination to the Costa Mesa, California address, that finding has no bearing on this Court's determination of whether it was reasonable for the agency to do so. Second, relevant precedent makes clear that conduct that is contrary to binding precedent and regulations cannot be substantially justified --- here, the BLM was required under its own regulations to send the Lease Determination to Mr. Mann's "last address of record," which was his Malibu, California address. *See Mann II*, 334 F.3d at 1052. Instead, the BLM mailed the Lease Determination to a Costa Mesa, California address for plaintiff's business --- an address it obtained from an unsigned copy of correspondence between Mr. Mann and his lease bond insurance agency --- thereby violating applicable regulations and breaching the lease. Further, when the Lease Determination was sent back to the BLM as "unclaimed," the BLM did nothing, which was both unreasonable and a violation of agency regulations. Under these circumstances, the BLM's conduct was not substantially justified.

As to the government's litigation positions, the government correctly points out that "individual arguments are not the proper focus of an EAJA analysis." Def.'s Mem. at 4. The government thus contends that although plaintiff ultimately prevailed, the government's litigation position "as a whole" was substantially justified. Def.'s Mem. at 4-5. The Court, however, finds that the position taken by the government during litigation was not reasonable and thus was not substantially justified. Here, the government contended that sending the Lease Determination to the Costa Mesa, California address constituted sufficient constructive notice because that was his "last address of record" with the BLM. Def.'s Mem. at 2–3; *see also Mann II*, 334 F.3d at 1051. The government based this argument on the courtesy copy of the correspondence Mr. Mann sent as president of Crowne Geothermal to his lease bond agency and forwarded to the BLM, listing the Costa Mesa, California address.

While the regulations incorporated into Mr. Mann's lease did not define the phrase "last address of record," IBLA precedent states that a lessee's "last address of record" is "'the place where the party to receive documents has declared he will receive such delivery.'" *Mann II*, 334 F.3d at 1052 (quoting Arthur M. Solender, 79 I.B.L.A. 70, 73 (1984)). In this case, Mr. Mann's last address of record with the BLM was his Malibu, California address. As the Federal Circuit noted, Mr. Mann did not express any intent to change his address of record with the BLM when he forwarded a letter he sent to his lease bond agency as a courtesy to the BLM. *See id.* Thus, it was not reasonable for the government to argue during litigation that it had provided sufficient notice of termination by sending the Lease Determination to the Costa Mesa, California address. Moreover, although the government did prevail on certain individual issues during the trials on the merits and damages, *see id.*; *see also Mann I*, 53 Fed. Cl. at 567–69 (rejecting Mr. Mann's due process claim and his claim that he was entitled to actual notice of the Lease Determination); *Mann II*,

334 F.3d at 1051 (upholding the trial court's rejection of Mr. Mann's claim that he was entitled to actual notice of the Lease Determination); *Mann IV*, 86 Fed. Cl. at 666–68 (rejecting Mr. Mann's lost profits damages theory in total and his reliance and restitution theories in part), the appropriate inquiry is not whether individual arguments made by the government were reasonable but instead whether its position "as a whole" was substantially justified.  Given the underlying facts in this case the Court is not persuaded that the government's litigation position as a whole --- that it provided sufficient notice by sending the Lease Determination to the Costa Mesa, California address --- was substantially justified.  Thus, the Court finds that the government has not satisfied its burden and, accordingly, plaintiff is entitled to attorney's fees and costs under the EAJA.

## C.  Quantum of Award

Having determined that Mr. Mann is entitled to attorney's fees and costs, the court has discretion to determine what fee is reasonable.  *See Jean*, 496 U.S. at 161; *Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987).  A party seeking an award of fees must submit "an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed."  28 U.S.C. § 2412(d)(1)(B).  Plaintiff seeks: (1) $262,449.17 in attorney's fees and $90,117.65[3] in costs for the merits phase of the litigation, and (2) $21,432.32 in attorney's fees and costs for the EAJA phase of the litigation.[4]  Pl.'s Mot. ¶ 4; Pl.'s Reply at 19–20 & n.14.  Plaintiff's request for attorney's fees includes a cost of living adjustment ("COLA") above the statutory cap of $125 per hour set by the EAJA.  Pl.'s Mem. at 20.  While the government does not challenge Mr. Mann's fee calculation or his request for a COLA, the government does argue that plaintiff's fee award should be reduced to reflect his "limited success" and that plaintiff should not recover any costs for those witnesses who offered testimony in connection with his unsuccessful claim for lost profits.  Def.'s Mem. at 10.

### *1.  Reasonable Attorney's Fees*

The first step in determining the amount of reasonable attorney's fees is to calculate the lodestar amount by multiplying the number of hours spent on the litigation by a reasonable hourly rate not to exceed the statutory cap of $125 per hour.  *First Fed. Sav. & Loan Ass'n v. United States*, 88 Fed. Cl. 572, 587 (2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)).  Plaintiff has submitted

---

[3]  Plaintiff's total request for costs includes $5,239.70 in costs that were also included in the Bill of Costs submitted to the Clerk of the Court pursuant to RCFC 54(d).

[4]  The $21,432.32 in attorney's fees and costs requested for the EAJA phase includes a $700 fee incurred to prepare Mr. Mann's Statement of Financial Condition.  *See infra* Part II.C.3.

sufficient documentation to reflect that his attorneys worked 1,703.19 hours on the merits phase of his case.  Multiplied by the statutory hourly rate of $125 per hour, plaintiff would be entitled to a total of $212,898.75 in attorney's fees for the merits phase of the litigation.  The government contests this calculation only inasmuch as it includes time spent in connection with expert witnesses Jack Whittier and Angela Crooks, provided by McNeil Technologies, Inc., to testify in connection with plaintiff's claim for lost profits.  Def.'s Mem. at 10.  For the reasons that follow, the Court finds that plaintiff is entitled to the full amount of attorney's fees he seeks.

Where a plaintiff is the prevailing party but has succeeded on only some of his claims for relief, this Court has discretion to adjust the fee based upon the results obtained by the plaintiff.  *See Hensley*, 424 U.S. at 434–35 ("There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'  This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief.").  *But see Dalles Irrigation Dist.*, 91 Fed. Cl. at 698 ("'[A]ttorney's fees are not limited to the dollars awarded,' nor is it necessary for the claimant to have obtained success on all items of relief requested." (citations omitted) (quoting *Hubbard v. United States*, 80 Fed. Cl. 282, 286 (2008), *aff'd*, 315 Fed. App'x 307 (Fed. Cir. 2009))).  In a case where a plaintiff presents distinctly different claims for relief based on different facts and legal theories, work done on one claim may be unrelated to work on another claim, and as such "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'"  *Hensley*, 461 U.S. at 435.

Where a plaintiff's claims for relief, however, involve "a common core of facts or will be based on related legal theories . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.* at 435.  Indeed, it may be that where a plaintiff's claims arise from a common set of facts, the court may not be able to "divide the portion of fees spent on separate issues . . . for distinctly different claims."  *Loomis*, 74 Fed. Cl. at 359.  In those situations, a "fee award is not reduced 'simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'"  *Id.*  Rather, "litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters."[5]  *Hensley*, 461 U.S. at 435.  While "[a] reduced fee award is appropriate if the relief, however

---

[5]  Although *Hensley* dealt with an award of fees pursuant to Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, the Federal Circuit extended this test to claims brought under the EAJA.  *See Hubbard v. United States*, 480 F.3d 1327, 1333 (Fed. Cir. 2007) ("Although [*Hensley*] involved the fee-shifting provision of the Civil Rights Act, we see no reason why the foregoing principles there announced should not be equally applicable to the parallel fee-shifting provision of the Equal Access to Justice Act.").

significant, is limited in comparison to the scope of the litigation as a whole," *id.* at 440, this Court has discretion to weigh the degree of success and determine the extent to which the result in a particular case dictates whether the fee award should be reduced. *Id.* at 436–37 ("There is no precise rule or formula for making these determinations. . . . The court necessarily has discretion in making this equitable judgment."); *Dalles Irrigation Dist.*, 91 Fed. Cl. at 699 ("[I]n a case where significant but partial success was obtained, the degree of success factors into the amount of fees awarded[.]"); *Loomis*, 74 Fed. Cl. at 359.

At trial to determine damages, plaintiff based his claims for breach of contract damages on the alternative legal theories of lost profits, reliance, and restitution. *See Mann IV*, 86 Fed. Cl. at 663–68. Although this Court rejected plaintiff's lost profits theory, the Court found that plaintiff was entitled to $869,501.52 in damages based upon the alternative grounds of reliance or restitution. *Id.* at 667. There, plaintiff's claims were based upon the same underlying core of facts --- the circumstances surrounding the government's breach of his geothermal lease --- and the alternative forms of relief he sought were based upon the various forms of relief available as breach of contract damages. Although plaintiff ultimately did not prevail on his claim for lost profits, the time and money spent pursuing that theory were reasonably related to and expended on the litigation. In this regard, the Court notes that the very nature of the breach committed by the government --- termination of a lease without proper notice --- made calculating lost profits extremely difficult, as plaintiff was in the dark about the termination for more than a year and a half. *See Mann IV*, 86 Fed. Cl. at 664–65. Under such circumstances, reducing an attorney's fees award due to the failure to prove lost profits would allow the government "to reap advantage from [its] own wrong." *Locke v. United States*, 151 Ct. Cl. 262, 267 (1960). Nor is the Court persuaded that plaintiff's having proven fewer damages than sought makes the number of hours spent by his attorney unreasonable in any way. Accordingly, plaintiff is entitled to the full $212,898.75 in attorney's fees he seeks for the merits phase of the litigation.

Plaintiff also requests attorney's fees incurred in the EAJA phase of the litigation. Pl.'s Reply at 19–20. According to plaintiff, his attorneys spent a total of 120.2 hours preparing his EAJA application. Declaration of Stephen J. Lechner ¶¶ 2–4, Pl.'s Mem., Ex. E ("Lechner Dec."); Pl.'s Reply at 19–20. It is well-established that plaintiffs are entitled to recover attorney's fees and expenses incurred in preparing an EAJA application. *See Hubbard v. United States*, 480 F.3d 1327, 1331 (Fed. Cir. 2007); *Filtration Dev. Co.*, 63 Fed. Cl. at 626. The government does not appear to oppose the award of such fees. Moreover, plaintiff has provided the court with sufficient itemized documentation to support his claim. *See* Lechner Dec. ¶¶ 9–10; Second Declaration of Stephen Lechner ¶¶ 2–4, Pl.'s Reply, Ex. 5 ("Second Lechner Dec."). Accordingly, the Court concludes that plaintiff is entitled to the full amount of attorney's fees he requests for the EAJA phase of this case.

Multiplied by the statutory rate of $125 per hour, plaintiff would thus be entitled to an additional $15,725.00 in attorney's fees and costs.

### 2.  Cost of Living Adjustment

Plaintiff requests that a cost of living adjustment ("COLA") over and above the statutory $125 per hour rate set by the EAJA be applied to the attorney's fees he requests.  Pl.'s Mem. at 20.  The EAJA explicitly contemplates such an adjustment to the statutory cap on fees.  *See* 28 U.S.C. § 2412(d)(2)(A)(ii) ("[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee.").  This adjustment is measured from the effective date of the amended statutory cap --- here, March 1996 --- until such time as services are rendered.  *See Doty*, 71 F.3d at 387; *Cal. Marine Cleaning v. United States*, 43 Fed. Cl. 724, 734 (1999).  While the award of a COLA is made at the court's discretion, *see Filtration Dev. Co.*, 63 Fed. Cl. at 625; *KMS Fusion*, 39 Fed. Cl. 593, 603 (1997), a plaintiff's allegation of an increase in the cost of living as measured by the Department of Labor's Consumer Price Index ("CPI") is sufficient justification for such an award.  *See Filtration Dev. Co.*, 63 Fed. Cl. at 625; *see also Keeton Corr., Inc. v. United States*, 62 Fed. Cl. 134, 139 (2004); *Cal. Marine Cleaning, Inc.*, 43 Fed. Cl. at 733.  Indeed, this Court has "'decline[d] to impose a requirement that an applicant must do more than request such an adjustment and present a basis upon which the adjustment should be calculated.'"  *Filtration Dev. Co.*, 63 Fed. Cl. at 625 (quoting *Cal. Marine Cleaning*, 43 Fed. Cl. at 733).

The Court finds that plaintiff is entitled to a COLA to the statutory cap on attorney's fees.  Plaintiff identifies March 1996 --- the effective date of the amended statutory cap --- as the baseline, and calculates the COLA using a month-by-month comparison between the March 1996 CPI and the CPI for each month during the time the legal work was performed.  Pl.'s Mem. at 21.  Plaintiff then adjusts the $125 statutory cap for each month based upon that difference, and multiplies the adjusted monthly rate by the number of hours billed that month.  *Id.*  This is a permissible method for calculating a COLA.  *See Carmichael v. United States*, 70 Fed. Cl. 81, 86 (2006) ("An alternative method is to calculate the COLA month by month by comparing the March 1996 CPI to the CPI for each month an attorney billed hours.  The court will then adjust the $125 cap for a given month by the percent difference between the March 1996 CPI and that month's CPI and calculate the fees for that month by multiplying the number of hours billed by the adjusted rate."); *see also Gonzalez v. United States*, 44 Fed. Cl. 764, 771 (1999).

The government does not appear to oppose plaintiff's request for a COLA or his proposed calculation thereof.  As such, the court concludes that plaintiff's requested attorney's fees of $212,898.75 for the merits phase of litigation be adjusted to $262,449.17, and the attorney's fees of $15,025.00 for the EAJA phase of

the litigation be adjusted to $20,732.32.  Plaintiff is thus entitled to a total of $283,881.49 in attorney's fees.

### 3.  Costs

Mister Mann identifies $65,757.63 in costs paid directly by him, *see* Declaration of Stanley K. Mann ¶ 4, Pl.'s Mem., Ex. A ("Mann Dec."), as well as an additional $24,360.02 in costs incurred by his attorneys, *see* Lechner Dec. ¶¶ 7–8. These costs include but are not limited to travel expenses, court reporter fees, deposition and transcript costs, and filing fees.  Lechner Dec. ¶ 7 and Ex. 3. Additionally, plaintiff seeks reimbursement of the $700 fee he paid to his certified personal accountant to prepare a Statement of Financial Condition, submitted as evidence that his net worth did not exceed the statutory cap set by the EAJA of $2 million at the time the action was filed.  Pl.'s Reply at 20 n. 14.  The EAJA provides examples of expenses that may be recovered by a prevailing party, *see* 28 U.S.C. § 2412(d)(2)(A), but that list is not exhaustive.  *See Oliveira*, 827 F.2d at 744.  A plaintiff seeking an award of costs under the EAJA is required to submit supporting documentation in the form of "an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses are computed."  28 U.S.C. § 2412(d)(1)(B).  Plaintiff has provided the Court with voluminous records documenting the costs and fees incurred by him personally as well as by his attorneys, including itemized statements showing the specific breakdown of time spent, costs, and services provided.  *See* Mann Dec., Exs. 1–3; Lechner Dec., Exs. 1–6; Second Lechner Dec., Exs. A–C.  The Court finds such documentation sufficient to establish that plaintiff is entitled to reimbursement for his costs pursuant to the EAJA.

Moreover, the government does not appear to contest the award of costs except for those incurred in connection with expert witnesses Whittier and Crooks. As explained above, however, the Court is not persuaded that Mr. Mann's failure to prevail under his lost profits theory justifies reducing the award, but rather finds that the fees and costs associated with the claim for lost profits were reasonable. Not only did the Court find the report of plaintiff's experts sufficient to enable Mr. Mann's lost profits theory to survive summary judgment, *see Mann III*, 68 Fed. Cl. at 669–70, but Mr. Whittier's trial testimony was more persuasive than the government's expert and was necessary for the Court's understanding of the potential uses of the leased lands, *see Mann IV*, 86 Fed. Cl. at 664.  That Mr. Whittier ultimately failed to prove lost profits to the Court's satisfaction does not preclude reimbursement of his costs, *see Baldi Bros. Constructors v. United States*, 52 Fed. Cl. 78, 85–86 (2002), particularly when this failure was in large part due to the nature of the government's breach, *see Mann IV*, 86 Fed. Cl. at 664–65.  The Court thus finds that plaintiff is entitled to reimbursement of the full $90,817.65 in costs he seeks, reduced only by those costs already awarded to plaintiff or

disallowed by the Clerk of the Court pursuant to RCFC 54(d) and 28 U.S.C. §§ 1821 and 1920.[6]  Plaintiff is thus entitled to $85,577.95 in costs.

## III.  CONCLUSION

For the foregoing reasons, the Court has determined that plaintiff has proven attorney's fees and costs consisting of the following amounts: $283,181.49 in attorney's fees, and $85,577.95 in costs.  The government has not met its burden of demonstrating that its position was substantially justified, and plaintiff is thus entitled to an award of attorney's fees and costs totaling $368,759.44.  The Clerk of the Court shall enter judgment for plaintiff on its application for attorney's fees and costs in the amount of $368,759.44.

**IT IS SO ORDERED**.

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge

---

[6]  The Clerk of the Court found plaintiff was entitled to $5,159.70 out of the total $5,239.70 he requested: $120.00 for filing fees paid to the clerk; $148.50 for duplication of papers; $3,315.15 for transcripts of court proceedings; $1,471.05 for costs incidental to the taking of depositions; and $105.00 for the filing fee for his appeal to the Federal Circuit.  *See* Taxation of Costs at 1–3.  The only cost disallowed by the Clerk was part of plaintiff's request for fees incident to the taking of depositions, which exceeded the statutory cap of $40 per day per witness for each day's attendance.  *See* 28 U.S.C. § 1821(b).  Plaintiff's request for $1,551.05 for fees incident to the taking of depositions was thus reduced by $80.00, to $1,471.05.  *See* Taxation of Costs at 3.